UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami-Dade County Division

CASE NO.: 26-cv-21258

NIDZARA MULIC,

Plaintiff,

vs.

INTERNATIONAL CRUISE SHOPS LTD.,
A Cayman Corporation;

and

SILVERSEA CRUISES LTD., INC.,
A foreign profit corporation;

Defendants.
_____/

## PLAINTIFF'S COMPLAINT FOR DAMAGES

The Plaintiff, NIDZARA MULIC, hereinafter, "MULIC", files this Complaint against the Defendants, INTERNATIONAL CRUISE SHOPS, LTD., a Cayman Corporation, hereinafter, "ICS", and SILVERSEA CRUISES LTD., INC., a Foreign Profit Corporation, hereinafter, "SILVERSEA" and alleges as follows:

As to All Counts

JURISDICTION AND VENUE

1.     This court has subject matter jurisdiction over this action as the Plaintiff's claims are for damages in excess of seventy-five thousand dollars ($75,000.00) exclusive of all attorney's fees, costs and interest, and pursuant to 28 U.S.C. sec. 1333, the *Savings to Suitors Clause*, as Plaintiff's claims arise under the Jones Act, 46 U.S.C. sec. 688 et seq., and General Maritime Law

CASE NO:

as recognized by the courts of these United States and the courts of the state of Florida. Further, the Defendants, "ICS" and "SILVERSEA", both have offices and operate their businesses out Miami-Dade County, Florida.

2. At all times material, herein the Defendant, ICS, which conducts business running stores and acting as a concessionaire aboard various cruise lines which include Royal Caribbean, Celebrity Cruises, Princess Cruises, Carnival Cruise Lines, Silver Sea, and Holland America. All of these cruise lines have and maintain a significant presence in South Florida as their ships use the ports of Miami and port Everglade on a consistent basis. Furthermore, each cruise line has offices in Miami and Fort Lauderdale as well. Finally, the Defendant, ICS, whose stores are aboard these various cruise lines also has a specific business presence in the State of Florida.

3. ICS employed the Plaintiff pursuant to an employment contract aboard Silversea, the "Muse", as a concessionaire and seaman.

4. Additionally, ICS, at all times material hereto:

   (a) Operated, conducted, engaged in, or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

   (b) Was engaged in substantial activity and operations within this state; and

   (c) Employed individuals aboard cruise ships which operated vessels in the waters of this state.

5. Defendant, ICS, is therefore subject to the jurisdiction of this court. Finally, the Defendant, ICS's, employment contract called specifically for the forum to be the United States

CASE NO:

District Court for the Southern District of Florida, Miami Division. As such this Court has jurisdiction over this matter.

6. This Court has personal jurisdiction over the Defendant, SILVERSEA, and venue is proper in this Court as the Defendant, a Foreign Profit Corporation, operates a passenger cruise ship line from their principal place of business which is in Miami-Dade County, Florida at the port of Miami. Moreover, the claims asserted herein are directly related to and arise from the operation of such passenger cruise ship line.

7. At all times material herein SILVERSEA was the owner and/or operator of the vessel: "Muse" and/or was the bareboat Charterer and/or was the owner pro hac vice, thereof, in coastwise, inter-coastal and foreign commerce.

8. Additionally, SILVERSEA, at all times material hereto:

(a) Operated, managed, maintained, conducted, engaged in, or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

(b) Was engaged in substantial activity and operations within this state; and

(c) Employed individuals aboard cruise ships which operated vessels in the waters of this state.

9. Defendant, SILVERSEA, is therefore subject to the jurisdiction of this court.

CASE NO:

10. At all times material herein, the Defendant, SILVERSEA, owned, operated, and/or otherwise controlled the passenger ship the "Muse." Accordingly, SILVERSEA, is a common carrier of passengers by water for hire.

11. At all time herein the Plaintiff, MULIC, was employed as a concessionaire and seaman by Co-Defendant, ICS, and as such is considered a seaman while working on Defendant SILVERSEA's ship, the "Muse".

12. Defendant, SILVERSEA, is therefore subject to the jurisdiction of this court.

13. The causes of action asserted in this Complaint fall under the Jones Act, 46 U.S.C. section 688, and General Maritime Law of the United States and Florida Statute 586.011, Declaratory Judgment.

14. At all times material hereto, Defendants operated, managed, maintained and/or controlled the subject vessels on which MULIC was employed as a seaman.

15. At all times material hereto, Plaintiff, MULIC, was a citizen of Bosnia over the age of eighteen (18), who worked for both Defendants as a seaman and a concessionaire as a Boutique Manager aboard Defendant SILVERSEA's vessel the muse in 2024.

16. The Defendants employed the Plaintiff pursuant to an employment contract aboard its' vessel as a seaman and concessionaire in 2024.

17. At all times material hereto, Plaintiff, was performing her duties as a member of the vessel as a seaman and concessionaire while the Defendant's subject vessel was in operation on navigable waters. Plaintiff is therefore also subject to the jurisdiction of this Court.

CASE NO:

## GENERAL ALLEGATIONS

Plaintiff re-adopts and re-alleges paragraphs 1 through 17 above and states:

18.   On or about November 15, 2024, the Plaintiff was exiting Defendant SILVERSEA's ship in Australia at approximately 11:30 am. Descending the gangway the Plaintiff slipped and fell and severely injured her right knee. It should be noted that there were no warning signs at that time on the gangway and that the "friction strips" to help people navigate the gangway were essentially eroded and gone. The gangway was and is part of SILEVERSEAS ship and is maintained by SILVERSEA.

19.   After injuring her right knee Plaintiff went to the ship's infirmary where a guest was already in the medical center and being treated for – a slip and fall on the same gangway with the faulty "friction strips" that Plaintiff had just injured herself on. At the same time the ship's security staff admitted to Plaintiff that the friction strips were worn and useless. The friction strips not surprisingly were replaced two days after this incident.

20.   The Plaintiff was seen and told she was essentially okay and given two (2) days off her duties. The doctors on the ship and the medical treatment for Plaintiff MULIC is governed by Co-Defendant ICS.

21.   After continuing to work for weeks Plaintiff was finally taken shoreside on December 5, 2024 where a simple X-ray revealed he had been suffering some type of "loose body" in her right knee.

22.   Plaintiff was made to continue to work and on December 11, 2024 almost a full month later an MRI, that was interpreted on December 20, 2024, revealed Plaintiff had suffered a devastating ligament rupture in the right knee, as well as a patellar dislocation, and torn cartilage

CASE NO:

(the loose bodies on the X-Ray) of the right knee. Plaintiff was disembarked on December 23, 2024 for emergency surgery.

23.     On February 19, 2025 the Plaintiff underwent a debridement of the right knee, as well as patellar dislocation, and a MPFL or Medial Patellofemoral Ligament reconstruction. In short, the Plaintiff's knee was destroyed as well as her right knee patellar and patellar ligament and as well as cartilage torn in the right patellar.

24.     After grueling therapy the Plaintiff was informed by her surgeon that she would require one, if not multiple, knee replacements in the future.

## COUNT I
## FAILURE TO PROVIDE APPROPRIATE MAINTENANCE AND CURE AS TO ICS

Plaintiff re-adopts and re-alleges paragraphs 1 through 24 above and states:

25.     The Defendant, ICS, as the contractual employer of the Plaintiff, owes Plaintiff a General Maritime non-delegable duty to provide maintenance and cure for any and all medical conditions she contracted while in the service of the vessel. The Defendant is also responsible to treat any medical condition which manifested while Plaintiff was convalescing shoreside.

26.     Plaintiff while in the employ of the Defendant's vessel became injured as described above. Despite repeated and ongoing requests, the Defendant has refused to fully comply with its' obligations to provide maintenance, and proper and adequate cure, to the Plaintiff. The precise amounts owed for maintenance and cure and/or the exact dates for which such payments were due, will be determined through discovery.

27.     Instead of providing prompt and adequate medical treatment to the Plaintiff which Defendant knew was necessary, Defendant ignored the Plaintiff's repeated requests for maintenance and cure, for timely diagnostic testing, for the interpretation of such tests, for appropriate treatment by specialists, and for appropriate medical care. This delay has resulted in the worsening of Plaintiff's

CASE NO:

multiple medical conditions and the Plaintiff endured additional pain, suffering, disability, scarring and disfigurement. The delay and withholding of the Plaintiff's maintenance and cure by the Defendant aggravated all of the Plaintiff's underlying medical conditions. Specifically, the Defendant denied Plaintiff's request immediate knee surgery but this was delayed by almost a month. This despite knowing that the Defendant had an obligation to give the Plaintiff the benefit of the doubt medically.

28. Any cure that Plaintiff did receive was inadequate, resulting in a further worsening of her condition, and extreme pain and suffering to Plaintiff.

29. The Defendant acted in a willful, arbitrary and/or callous manner by ignoring Plaintiff's need for medical treatment and maintenance and cure and by refusing to pay all of Plaintiff's unearned wages or any maintenance until Plaintiff was forced to hire counsel to pursue said wages and all of her maintenance and cure rights.

30. The Defendant breached its' obligations to provide maintenance and cure to the Plaintiff and therefore the Plaintiff never reached maximum medical improvement.

31. As a direct and proximate result of the Defendant's persistent failure to provide maintenance and proper cure, Plaintiff was injured in and about her body and extremities, and suffered, including but not limited to the following, pain, both past and future, therefrom, suffered mental and emotional distress, mental anguish, suffered significant scarring, suffered aggravation of pre-existing conditions or injury, incurred medical expenses in the care and treatment of her injuries, both past and future, and requires further medical care in the future including care for her right knee, suffered physical handicap, disability, expenses, attorney's fees, sustained the loss of ability to enjoy and lead a normal life, lost wages, the loss of future earning capacity, tips, and fringe benefits and her ability to work was impaired. In addition, the Plaintiff incurred out of pocket expenses as a result of the Defendant's actions. Plaintiff's injuries are permanent and continuing in nature, and Plaintiff will

7

CASE NO:

suffer losses and impairments in the future and will require ongoing medical treatment and care for the remainder of her life.

32. The Plaintiff was forced to hire counsel to pursue his remedies and is obligated to pay attorney's fees and costs.

33. Plaintiff's injuries were caused wholly and solely by the negligence of the Defendant, its' agents, servants and/or employees, as more specifically set forth above.

**WHEREFORE**, Plaintiff demands judgment and the provision of all of Plaintiff's past maintenance and cure together with pre and post judgment interest, costs, and attorney's fees, and for all other damages allowed by law including but not limited to, any and all compensatory and consequential damages, as described above, for the aggravation of Plaintiff's medical conditions as a result of the failure to provide Plaintiff with appropriate maintenance and cure, as well as punitive damages, against the Defendant, ICS, and any other relief this Court deems appropriate under the circumstances. The Plaintiff demands judgment for all damages recoverable under the law against Defendant and demands a jury trial on this count, as her right under General Maritime Law.

## COUNT II
## JONES ACT FAILURE TO PROVIDE PROMPT AND ADEQUATE MEDICAL TREATMENT AS TO ICS

Plaintiff readopts and re-alleges the allegations contained in Paragraphs 1 through 24, and further states:

34. As a result of Plaintiff's status as a seaman and the Defendant's relationship to Plaintiff as his contractual employer, Defendant, ICS, owes the Plaintiff a non-delegable duty to provide her with prompt and adequate medical care for any illness and/or injuries she suffers or that manifest while in service to the Defendant's vessel. Defendant failed to provide prompt and adequate medical care to Plaintiff as described above.

CASE NO:

35. That duty includes ordering appropriate medical tests, arranging evaluations by appropriate specialists, rendering a timely diagnosis, and providing timely and appropriate treatment including any therapeutic treatment for Plaintiff's right knee.

36. The Defendant breached its duty to provide the Plaintiff with prompt and adequate medical care and treatment in the following manner:

(a) Failing to have Plaintiff promptly seen for her medical conditions;

(b) Failing to properly and promptly diagnose and assess Plaintiff's medical conditions but instead made her to work for a month while injured;

(c) Failing to perform and/or order necessary scans, tests and examinations to determine the extent and nature of Plaintiff's medical conditions;

(d) Failing to promptly provide Plaintiff with reasonable and necessary medical care including shore care and the referral to appropriate specialists and failing to provide Plaintiff with his initial surgeries in a timely fashion;

(e) Failing to timely and properly diagnose Plaintiff's medical conditions;

(f) Failing to provide Plaintiff with the proper follow-up medical care and medical treatment, including but not limited to appropriate follow-up appointments, medications, diagnostic testing, therapy, surgeries and monitoring;

(g) Forcing Plaintiff to procure her own medical care and further failing to compensate Plaintiff for same; and

(h) Other acts of negligence to be determined in discovery as this matter progresses.

37. The medical care and medical treatment provided to Plaintiff was inadequate, resulting in a worsening of Plaintiff's medical conditions.

CASE NO:

38. As a direct and proximate result of the Defendant's persistent failure to provide prompt and adequate medical care and treatment to the Plaintiff, Plaintiff was injured in and about her body and extremities, and suffered, including but not limited to the following, pain therefrom both past and future, suffered mental and emotional distress, mental anguish, suffered significant scarring, suffered aggravation of pre-existing conditions or injury, incurred medical expenses in the care and treatment of her injuries both past and future and requires further medical care including care for her right knee, suffered physical handicap, disability, expenses, attorney's fees, sustained the loss of ability to enjoy and lead a normal life, lost wages, the loss of future earning capacity, tips, and fringe benefits and her ability to work was impaired. In addition, the Plaintiff incurred out of pocket expenses as a result of the Defendant's actions. Plaintiff's injuries are permanent and continuing in nature, and Plaintiff will suffer losses and impairments in the future and will require ongoing medical treatment and care for the remainder of her life.

39. Plaintiff's injuries were caused wholly and solely by the negligence of the Defendant, its' agents, servants and/or employees, as more specifically set forth above.

**WHEREFORE**, Plaintiff demands judgment and the provision of all of Plaintiff's past maintenance and cure to the present, together with pre and post judgment interest, costs, and attorney's fees, and for all other damages allowed by law including but not limited to, any and all compensatory and consequential damages, as described above, for the aggravation of Plaintiff's medical conditions as a result of the failure to provide Plaintiff with appropriate maintenance and cure and appropriate medical care under the Jones Acta against the Defendant, ICS, and any other relief this Court deems appropriate under the circumstances. The Plaintiff demands judgment for all damages recoverable under the law against Defendant and demands a jury trial on this count, as is her right under General Maritime Law.

CASE NO:

40. Currently, Plaintiff is not at MMI and will require medical treatment for the remainder of her life.

## COUNT III
## JONES ACT NEGLIGENCE AS TO ICS

Plaintiff re-adopts and re-alleges paragraphs 1 through 24 above and states:

41. This count is brought against the Defendant, ICS, for breach of the non-delegable duty to provide Plaintiff with a reasonably safe vessel upon which to serve. This duty is imposed upon the Defendant pursuant to the Jones Act, 46 U.S.C. Section 688, et seq., as the employer of the Plaintiff as a Jones Act Seaman.

42. Defendant's duty to provide a reasonably safe vessel upon which for Plaintiff to serve aboard extended to all areas of the vessel including its equipment, machinery, appurtenances, crew, staff and officers. More specifically Defendant failed provide Plaintiff with a safe place to work as described above, including but not limited to, failing to have the gangway as described above in a safe condition.

43. The Defendant owed the Plaintiff a duty to exercise a reasonable degree of care in the operation of its' business.

44. Defendant breached this duty to provide Plaintiff with a reasonably safe vessel upon which to serve, in the following ways:

(a) Defendant failed to use reasonable care to provide a safe place to work;

(b) Defendant failed to promulgate and enforce reasonable rules and regulations to insure the safety and health of the plaintiff while engaged in the course of his employment on the vessel, more specifically Defendant failed to enforce any rules, regulations, safety equipment, guidelines, or procedures of any kind to prevent the Plaintiff from suffering his injury as she did in this instance;

CASE NO:

(c) Failure to use reasonable care to provide Plaintiff with a safe place to work and otherwise failing to use reasonable care to maintain the work place in a safe condition for Plaintiff more specifically including, but not limited to, Defendant failed to provide a safe gangway as expressed above and failed to warn Plaintiff of same;

(d) Failure to ascertain the cause of prior similar accidents so as to take measures to prevent their reoccurrence and more particularly Plaintiff's accident especially given a passenger fell and was injured a short while prior to Plaintiff's injury; and

(e) Failure to follow sound management practices with the goal of providing Plaintiff a safe place to work. Prior to Plaintiff's accident, Defendant failed to investigate the hazards to Plaintiff and then take the necessary steps to eliminate the hazards, minimize the hazard or warn the Plaintiff of the danger from the hazards as described above.

45. Defendant knew of the foregoing conditions causing Plaintiff's accident and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care should have learned of them and corrected them. This given a passenger fell shortly before Plaintiff in the same area, on the same gangway, for the same reason and Defendant's security staff admitted they knew the area was dangerous and fixed said gangway only two (2) days later.

46. The Plaintiff claims all damages allowable under the Jones Act and General Maritime Law. As a direct and proximate result of the aforementioned, Plaintiff was injured in and about her body and extremities, and suffered, including but not limited to the following, pain therefrom both past and future, suffered mental and emotional distress, mental anguish, suffered significant scarring, suffered aggravation of pre-existing conditions or injury, incurred medical expenses in the care and

CASE NO:

treatment of her injuries both past and future, underwent one right knee surgery requires further medical care, including a multiple future knee replacements, suffered physical handicap, disability, expenses, attorney's fees, sustained the loss of ability to enjoy and lead a normal life, lost wages, the loss of future earning capacity, tips, and fringe benefits and her ability to work was impaired. In addition, the Plaintiff incurred out of pocket expenses as a result of the Defendant's actions. Plaintiff's injuries are permanent and continuing in nature, and Plaintiff will suffer losses and impairments in the future and will require ongoing medical treatment and care for the remainder of her life.

47. Plaintiff's injuries were caused wholly and solely by the negligence of the Defendant, its agents, servants and/or employees, as more specifically set forth above.

**WHEREFORE**, the Plaintiff demands judgment against Defendant, ICS, for all damages allowed by law, with all any and all compensatory damages as described above, pre and post judgment interest, costs and all other relief the Court deems appropriate, and attorney's fees as permitted.

## COUNT IV

## UNSEAWORTHINESS AS TO SILVERSEA

Plaintiff re-adopts and re-alleges paragraphs 1 through 24, and further states:

48. On or about November 15, 2024, Plaintiff was a concessionaire and as such a seaman and a member of the crew of Defendant's vessel, the "Muse", which was in navigable waters.

49. The Defendant, SILVERSEA, as the owner and/or operator of the vessel upon which Plaintiff served as a seaman, owed the Plaintiff a non-delegable duty to provide her with a seaworthy vessel upon which to serve.  This duty extended to all areas of the vessel, its' equipment, appurtenances, crew and officers, and methods of work. Moreover, it required Defendant to undertake all measure necessary in order to make the duties and tasks assigned to Plaintiff to be reasonably safe.

50. The Defendant breached its duty to provide a seaworthy vessel in the following

CASE NO:

ways:

(a) Defendant failed to use reasonable care to provide a safe place to work;

(b) Defendant failed to promulgate and enforce reasonable rules and regulations to insure the safety and health of the Plaintiff while engaged in the course of her employment on the vessel, more specifically Defendant failed to enforce any rules, regulations, safety equipment, guidelines, or procedures of any kind to prevent the Plaintiff from suffering her injury as he did in this instance;

(c) Failure to use reasonable care to provide Plaintiff with a safe place to work and otherwise failing to use reasonable care to maintain the work place in a safe condition for Plaintiff more specifically including, but not limited to, Defendant failed to provide Plaintiff with a clean and safe gangway for exiting the vessel and the gangway itself was repaired the very next day and failed to warn her of same;

(d) Failure to ascertain the cause of prior similar accidents so as to take measures to prevent their reoccurrence and more particularly Plaintiff's accident; and

(e) Failure to follow sound management practices with the goal of providing Plaintiff a safe place to work. Prior to Plaintiff's accident, Defendant failed to investigate the hazards to Plaintiff and then take the necessary steps to eliminate the hazards, minimize the hazard or warn the Plaintiff of the danger from the hazards as described above.

51. As a direct and proximate result of such unseaworthiness and defective conditions of the ship, its equipment, method and mode of operation, or appurtenances, etc., which were not reasonably fit for their intended use, Plaintiff was injured in and about her body and extremities, and suffered, including but not limited to the following, pain therefrom both past and future, suffered

14

CASE NO:

mental and emotional distress, mental anguish, suffered significant scarring, suffered aggravation of pre-existing conditions or injury, incurred medical expenses in the care and treatment of her injuries both past and future, underwent one knee surgery and will require multiple total knee replacements in the future and requires further medical care, suffered physical handicap, disability, expenses, attorney's fees, sustained the loss of ability to enjoy and lead a normal life, lost wages, the loss of future earning capacity, tips, and fringe benefits and her ability to work was impaired. In addition, the Plaintiff incurred out of pocket expenses as a result of the Defendant's actions. Plaintiffs injuries are permanent and continuing in nature, and Plaintiff will suffer losses and impairments in the future and will require ongoing medical treatment and care for the remainder of her life.

52.   Plaintiff's injuries were caused wholly and solely by the negligence of the Defendant, its' agents, servants and/or employees, as more specifically set forth above.

**WHEREFORE**, Plaintiff demands judgment against Defendant, SILVERSEA, for all damages allowed by law, with costs and interest and all other relief this Court deems appropriate.

The Plaintiff further demands judgment for all damages recoverable under the law against Defendants and demands a jury trial on all counts, as is her right under General Maritime Law.

DATED THIS 25th day of February 2026,

Respectfully submitted,

Louis A. Vucci, PA
Attorney for Plaintiff
1 SE 3rd Avenue, Suite 3020
Miami, Florida 33131
Tel: (305) 573-0125
Fax: (786) 536-7799

By: /s LOUIS A. VUCCI, ESQ.
Louis A. Vucci, Esq.
Fla. Bar No.: 131581